NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2274
_____

LAWRENCE HODGE; MARIA HODGE,

GOVERNMENT OF THE VIRGIN ISLANDS, Intervenor

v.

BLUEBEARD'S CASTLE, INC.

WYNDHAM ST. THOMAS INC, f/k/a Equivest St. Thomas, Inc.,
successor by merger with Bluebeard's Castle, Inc.,
Appellant
_____

On Appeal from the District Court of the
Virgin Islands - Appellate Division
(D.C. No. 02-cv-00154)
Chief Judge: Hon. Raymond L. Finch
District Judge: Hon. Juan R. Sanchez
Superior Court Judge: Hon. Julio A. Brady
_____

Argued May 4, 2010

Before:  SMITH, CHAGARES and JORDAN, *Circuit Judges*.

(Filed August 27, 2010)
_____

Stefan B. Herpel   [ARGUED]
Gregory H. Hodges
Dudley, Topper & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI   00804
        *Counsel for Not-party Appellant*

Denise M. Francois   [ARGUED]
Hodge & Francois
1340 Taarneberg
St. Thomas, VI  00802
        *Counsel for Appellees*

Denise Counts
Richard S. Davis
Douglas J. Juergens
Department of Justice
34-38 Kronprindsens Gade, GERS Complex, 2nd Fl.
Charlotte Amalie, St. Thomas
USVI   00802
        *Counsel for Intervenor Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

The issue in this appeal is whether we have jurisdiction over an order of the

Appellate Division of the District Court of the Virgin Islands of the United States, which,

in addressing a ruling by the Virgin Islands Superior Court,[1] both affirmed a denial of

---

[1]At the time, the local trial court in the Virgin Islands was known as the Territorial Court.  On January 1, 2005, the name was changed to the Superior Court, and we refer to it as such throughout this opinion.

2

summary judgment and vacated a judgment providing for injunctive relief. The

jurisdictional problem is somewhat peculiar due to the change in court structure and

appellate review in the Virgin Islands that occurred during the course of the litigation. In

particular, the creation of the Supreme Court of the Virgin Islands, which replaced the

Appellate Division as the appellate tribunal for local cases in the Virgin Islands, is a

complicating factor. Ultimately, we conclude that we do not have jurisdiction over this

appeal under either 48 U.S.C. § 1613a or the collateral order doctrine. Furthermore, the

appellant lacks appellate standing because it is insufficiently aggrieved by the portion of

the order that vacates the injunction. Accordingly, we will dismiss the appeal for lack of

jurisdiction and lack of appellate standing.

I.      **Background**

This case evolved out of a long-running dispute among Bluebeard's Castle, Inc.

("BCI"),[2] Lawrence and Maria Hodge, and the Government of the Virgin Islands

concerning ownership of a road (the "disputed roadway" or the "road") known as

Frederiksberg Gade, which runs by the Hodges' property ("Parcel 39c") and property

owned by BCI on which BCI operates a hotel and a timeshare condominium complex.

Beginning in 1994, BCI erected a fence across the portion of the disputed roadway

leading to Parcel 39c, which BCI kept closed between midnight and 5:00 a.m., thereby

---

[2]Since the trial of this case, BCI has merged with Equivest St. Thomas, Inc., which
later changed its name to Wyndham St. Thomas, Inc. For ease of reference, we will refer
to the appellant as BCI.

obstructing access to the Hodges' property from the west. In November 1996, BCI began keeping the gate closed and padlocked throughout the day such that the Hodges could not access their property unless they passed through BCI's parking lot and approached their parcel from the east.

The Hodges first objected to the fence in a letter to BCI dated December 19, 1994. It is undisputed that BCI responded to the Hodges' letter, though the response is not in the record.[3] The Hodges also sent three additional letters complaining about the fence during the two years thereafter, to which BCI did not respond. In 1997, BCI erected a chain across the eastern end of the disputed roadway, obstructing access to the Hodges' property from the east. In July 1997, the Hodges again contacted BCI about the obstruction of the road, but received no response.

A.    *Proceedings in the Superior Court*

In November 1997, the Hodges sued BCI in the Superior Court of the Virgin Islands. Their complaint asserted several claims including: (1) claims for declaratory judgment that the Hodges are entitled to an easement by prescription or, alternatively, that the disputed roadway is public; (2) claims for damages for private and public nuisance because BCI intentionally deprived the Hodges of the use and enjoyment of their land; and (3) a claim for an injunction prohibiting BCI from obstructing the road. BCI brought

_____

[3]BCI's letter was lost in 1995 as a consequence of Hurricane Marilyn. It appears from the Hodges' subsequent response to BCI's letter, however, that BCI had explained its reasons for erecting the gate.

4

a counterclaim seeking, among other things, a declaratory judgment that it owns the disputed roadway. In January 2002, the Government of the Virgin Islands intervened, seeking a declaration that the disputed roadway is a public road and an injunction prohibiting BCI from blocking the roadway.

BCI moved for summary judgment, arguing, among other things, that the Hodges' claims for private and public nuisance were barred by the statute of limitations. The Superior Court denied that motion in its entirety. The Court found the applicable statute of limitations to be two years and, applying the "continuing torts doctrine,"[4] concluded that the Hodges' "cause of action accrues continually." (App. at JA000060.) Accordingly, the Hodges' nuisance claims were permitted to go to trial to the extent that they were based upon BCI's acts since November 1995, two years prior to the filing of the complaint.

A jury trial commenced on May 28, 2002. The parties stipulated that the claims for injunctive and declaratory relief would be submitted to the jury for it to address in an advisory capacity. As to the Hodges' nuisance claims, the jury concluded that the

---

[4]As described by the Superior Court:

> A continuing tort is, in essence, a succession of reoccurring torts that result in damages that are recoverable *each time they occur*. In theory, each instance of damage should give rise to a new claim and, thus, a new date of accrual.

(App. at JA000059 (quoting *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 988 (D.V.I. 1995)) (original emphasis).)

5

disputed roadway was public and, accordingly, awarded the Hodges $6,000.00 in compensatory damages and $1.00 in punitive damages. Having found the road to be public, the jury did not reach the issue of whether the Hodges possessed a prescriptive easement.

In a June 17, 2002 memorandum opinion announcing its findings of facts and conclusions of law, the Superior Court adopted the jury's advisory verdict, concluding that the disputed roadway has been public since at least 1912. The Court based its decision upon "abundant testimonial and documentary evidence," including evidence that "shows that the road is widely regarded as a public road by the community at large," that the Hodges and their predecessors used the road to access their property, and that the Government of the Virgin Islands Department of Public Works paved and maintained the road. (App. at JA000157-58.) The Court also accepted as credible the testimony of the Hodges' expert, Robert Murnan, Esquire,[5] who testified as to a "King's Road" theory. That theory draws on Denmark's colonial rule of the Virgin Islands to suggest that roads that were not conveyed to private owners by the King of Denmark were considered "the King's roads" and that those roads, including the disputed roadway, became public in 1917 when the United States purchased St. Thomas from Denmark.

---

[5]BCI had unsuccessfully moved to exclude Murnan's expert testimony prior to trial.

Turning to BCI's counterclaim seeking a declaration that it owned the disputed roadway, the Superior Court applied the doctrine of "estoppel in pais"[6] and concluded that BCI was estopped from asserting title to the road since it "ha[d] acted affirmatively to induce the widespread belief that the disputed roadway is public," for example, by allowing the Government of the Virgin Islands Department of Public Works to pave and maintain the road. (App. at JA000161-62 (footnote omitted).) The Court further noted that BCI had never asserted its alleged title to the road when the Hodges were bidding on Parcel 39c or during the events leading up to the litigation.

Based on its findings, the Court issued a declaratory judgment that the disputed roadway is public, and a permanent injunction prohibiting BCI from obstructing the Hodges' and the public's access to that roadway. The Superior Court also entered judgment on the jury's verdict, granting the Hodges $6,000 in compensatory damages and $1.00 in punitive damages, and awarded them attorneys' fees and costs. Having concluded that substantial evidence supported the jury's verdict and having adopted that verdict, the Superior Court denied BCI's renewed motion for judgment as a matter of law.

B.    *Proceedings in the Appellate Division*

BCI timely appealed to the Appellate Division, challenging the Superior Court's judgment, its denial of BCI's motion for judgment as a matter of law, and its award of

---

[6]The Superior Court explained that "[t]he doctrine of 'estoppel in pais' requires that one may not repudiate an act where that action works an injustice upon another who has relied thereon." (App. at JA000162 n.10.)

7

attorneys' fees and costs to the Hodges. BCI also asserted that the Hodges' nuisance claims were barred by the statute of limitations and that the Superior Court improperly denied its motion for summary judgment on that basis.

On April 1, 2009, the Appellate Division issued an opinion vacating the Superior Court's judgment and remanding for further proceedings, but affirming the denial of BCI's motion for summary judgment. First, the Appellate Division addressed BCI's statute of limitations argument, finding that the Superior Court properly applied the continuing torts doctrine to allow the Hodges' nuisance claims to proceed. Turning next to the Superior Court's denial of BCI's motion for judgment as a matter of law, the Appellate Division found that reversal was warranted because it was not "certain that [the Hodges and the government] were held to their burden of proof." (App. at JA-C0023.) Evidently driving that conclusion was the Appellate Division's view that the trial court's opinion lacked "a clear articulation and application of the legal standard governing the establishment of a public road. The rest of the record similarly sheds no light on what standard, if any, was applied." (*Id.*)

Noting an absence of Virgin Islands law governing the establishment of a public road, the Appellate Division explained that the Superior Court "did not explicitly rely on any of the traditional ways in which a public road may be created [that have been

established by case law from other jurisdictions] ... ."[7]  (*Id*. at JA-C0028.)  Instead, said

the Appellate Division, the Superior Court appeared to rest its conclusion that the road

was public on theories that lacked a basis in the law.  First, the Appellate Division

questioned the Superior Court's use of estoppel to find that the disputed roadway was

public, explaining that, although a public road may be created by implied dedication,

which is based upon principles of estoppel, "the case law suggests that estoppel in pais

does not by itself create a public road."  (*Id*. at JA-C0024.)  The Appellate Division also

"found no authority for the trial court's conclusion that the Disputed Roadway is public

because of its widespread acceptance as such" or "because [the road] was public at the

time of the transfer of the Virgin Islands from Denmark to the United States." (*Id*. at JA-

C0028.)  As to the second point, the Appellate Division found "no support" for Murnan's

theory about King's Roads because "the record offers ... no basis on which to determine

whether Murnan was appropriately qualified as an expert or whether the methods he used

were reliable."  (*Id*. at JA-C0028-29.)  Accordingly, the Appellate Division reversed and

remanded, stating:

> We do not mean to suggest that a new trial is necessarily warranted.  We
> leave that determination to the sound discretion of the trial court.  We do,
> however, note that to the extent the trial court's application of the law
> governing the establishment of a public road is predicated on facts not
> found in the record as it now exists, additional fact-finding may be required.

---

[7]The Appellate Division identified three such means by which a public road may be created: (1) by laying out and acceptance of a road by a town; (2) by dedication; and (3) by prescriptive use.

9

(*Id.* at JA-C0031 n.15.) Consistent with its opinion, the Appellate Division, in an April 1, 2009 order, affirmed the Superior Court's denial of BCI's motion for summary judgment and vacated the Superior Court's June 17, 2002 judgment.[8]

### C. *BCI's Appeal*

BCI timely appealed to our court. On May 6, 2009, the clerk of court sent a notice to the parties identifying a jurisdictional problem, specifically, the question of whether the Appellate Division's vacate and remand order is final within the meaning of 48 U.S.C. § 1613a(c) and thus, whether it is appealable at this time. (App. at JA-D0001 (citing *In re Alison*, 837 F.2d 619, 620 (3d Cir. 1988)).) The parties then submitted briefs addressing both the jurisdictional issues raised by the appeal and the merits. The jurisdictional arguments are dispositive.

## II. Discussion

BCI raises three arguments in support of its assertion that we have jurisdiction. First, it contends that we have jurisdiction pursuant to 48 U.S.C. § 1613a(d), which provides that appeals taken to the Appellate Division prior to the establishment of the Virgin Islands Supreme Court shall remain in the Appellate Division, with the opportunity for review by our court. Second, it says that, pursuant to the collateral order doctrine, we have jurisdiction over the portion of the Appellate Division's order affirming the Superior Court's denial of summary judgment on BCI's statute of limitations defense.

---

[8]The order also vacated the award of attorneys' fees and costs.

And third, it claims that we possess jurisdiction under 28 U.S.C. § 1292(a)(1), which provides for our review of interlocutory orders that dissolve injunctions. We address each of those arguments in turn.

A. *Appellate Jurisdiction in the Virgin Islands*

1. *Jurisdictional Landscape*

The Superior Court has general jurisdiction over civil matters invoking Virgin Islands law. V.I. CODE ANN. tit. 4, § 76(a) ("[T]he Superior Court shall have original jurisdiction in all civil actions ... ."). Until recently, pursuant to the Revised Organic Act, the Appellate Division of the District Court of the Virgin Islands had jurisdiction over appeals from the Superior Court, *see* 48 U.S.C. § 1613a(a) ("Prior to the establishment of [a local] appellate court ... , the District Court of the Virgin Islands shall have such appellate jurisdiction over the courts of the Virgin Islands established by local law ... ."), and our court had jurisdiction over "appeals from all final decisions of the district court on appeal from the [Superior Court],"[9] 48 U.S.C. § 1613a(c). We have interpreted § 1613a(c) to preclude our review of Appellate Division orders that reverse and remand a matter to the Superior Court because such orders are not final. *See In re Alison*, 837 F.2d 619, 620 (3d Cir. 1988) ("We conclude that the order reversing and remanding is not a

---

[9]This provision is similar to the familiar 28 U.S.C. § 1291, which provides that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands ... ."

'final decision,' and thus that we lack appellate jurisdiction."); *see also Gov't of the V.I. v. Hodge*, 359 F.3d 312, 318 (3d Cir. 2004) ("[R]emand orders are not final under § 1613a(c).").

In 2004, in accordance with 48 U.S.C. § 1611, the Supreme Court of the Virgin Islands was established. V.I. CODE ANN. tit. 4, § 21; *see also Kendall v. Russell*, 572 F.3d 126, 132 n.5 (3d Cir. 2009) ("The appellate court anticipated by the [Revised Organic Act] was formed when the Virgin Islands Legislature provided for the establishment of the Virgin Islands Supreme Court."). On January 29, 2007, the court assumed its appellate jurisdiction. *See Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009). Accordingly, appeals from the Superior Court are now taken to the Virgin Islands Supreme Court, except for those appeals that were already pending in the District Court. *See* 48 U.S.C. § 1613a(d); *see also* V.I. CODE ANN. tit. 4, § 32(a) ("The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."). Specifically, Section 1613a(d) provides that:

> Upon the establishment of [a local] appellate court ... all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court. The establishment of the appellate court shall not result in the loss of jurisdiction of the district court over any appeal then pending in it. The rulings of the district court on such appeals may be reviewed in the United States Court of Appeals for the Third Circuit ... notwithstanding the establishment of the appellate court.

48 U.S.C. § 1613a(d).

12

In other words, appeals that had already been taken to the Appellate Division were to proceed as they would have prior to the establishment of the Virgin Islands Supreme Court, with the opportunity for review by our court. Additionally, we have jurisdiction to review final decisions of the Virgin Islands Supreme Court by writ of certiorari for the first fifteen years following its creation. 48 U.S.C. § 1613. Otherwise, the relationship between the Supreme Court of the Virgin Islands and the federal courts is "governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States ... ." *Id.*; *see also In re Alison*, 837 F.2d at 621.

2.     *Section 1613a(d)*

BCI contends that 48 U.S.C. § 1613a(d) should be construed to permit an immediate appeal to our court of an Appellate Division order vacating a decision and remanding a case to the Superior Court. BCI argues that *Alison*, which addressed § 1613a(c), is not applicable here because the present case is governed by § 1613a(d), now that the Supreme Court of the Virgin Islands has been established. According to BCI, "the only meaningful construction of section 1613a(d) is that a 'vacate and remand' order ... is immediately appealable. Otherwise, the right to appeal to the Third Circuit granted by section 1613a(d) will, as a practical matter, be irretrievably lost." (Appellant's Op. Br. at 2.) That is because, says BCI, after remand, any appeal from the new trial or new findings of fact and conclusions of law must be taken to the Virgin Islands Supreme

13

Court, pursuant to § 1613a(d), with review in our court available only by writ of certiorari.

The immediate problem with BCI's argument is that there is no "right" to appeal a non-final order, such as the one at issue here. Thus, although BCI might be correct that the last sentence of § 1613a(d) suggests that "the parties' right to have District Court appellate decisions reviewed by the Third Circuit will not be affected as to pending appeals" (Appellant's Op. Br. at 4), there never was a right to have our court review non-final orders such as the one that BCI is now trying to appeal. *See In re Alison*, 837 F.2d at 620 (dismissing appeal for lack of jurisdiction because Appellate Division's vacate and remand order was not final and thus, not subject to review). In fact, BCI acknowledges that.[10] (Appellant's Op. Br. at 4 (acknowledging that "vacate and remand orders like the April 1[, 2009 order] are typically the kinds of orders that must await review at the

---

[10]In its reply brief, BCI seems to assert that, in light of the changing appellate structure in the Virgin Islands, the Appellate Division's April 1, 2009 order is essentially a final decision and thus, subject to appellate review at this time. A final decision "ends the litigation on the merits and leaves nothing ... to do but execute the judgment." *Hodge*, 359 F.3d at 318 (quotations omitted and alteration in original). Obviously, the Appellate Division's order to vacate and remand the case is not final because, on remand, the Superior Court will have far more to do than execute a judgment. Instead, the Superior Court will have to issue new findings of fact and conclusions of law on the record or it will have to conduct a new trial before rendering judgment. Furthermore, although § 1613a(d) is silent on the question of finality, as it states only that appeals from the district court "may be reviewed in the United States Court of Appeals for the Third Circuit," in the absence of a contrary authorization allowing us to hear an appeal from a non-final order, "we apply the general finality rule." *Gov't of the V.I. v. Rivera*, 333 F.3d 143, 148 (3d Cir. 2003).

14

conclusion of a case ... .").)  Accordingly, if the purpose of § 1613a(d) is to maintain the

status quo for those appeals that had already been filed under the old system, we lack

jurisdiction since we would have lacked jurisdiction under § 1613a(c) prior to the

establishment of the Virgin Islands Supreme Court.  Furthermore, it would make no sense

to construe § 1613a(d), which is triggered after the creation of a local appellate court, to

authorize us to have more expansive jurisdiction than we had under § 1613(c), when the

purpose of the Revised Organic Act is to encourage "the development of a local Virgin

Islands appellate structure with greater autonomy with respect to issues of Virgin Islands

law[.]"  *Alison*, 837 F.2d at 622.  Accordingly, we reject BCI's contention that § 1613a(d)

provides for our review at this time.[11]

B.      *The Collateral Order Doctrine*

BCI next argues that we have jurisdiction, pursuant to the collateral order doctrine,

over the portion of the Appellate Division's order affirming the Superior Court's denial of

BCI's motion for summary judgment based upon its statute of limitations defense.

---

[11]BCI suggests that "another possible way out of this procedural conflict would be a construction of section 1613a(d) under which both [BCI's] appeal of any final judgment by the Superior Court on remand and its appeal of the April 1 Order would be decided by the Third Circuit, and not the Virgin Islands Supreme Court." (Appellant's Op. Br. at 6.) Even if review in our court after remand were possible, which we highly doubt, this argument is clearly not ripe for our review since the Superior Court has not yet issued any judgment on remand. *See Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3d Cir. 2000) ("[T]he ripeness doctrine ... seeks to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." (quotations omitted)).

Pursuant to the collateral order doctrine, announced by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), "[a]n appeal of a nonfinal order will lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment." *Hodge*, 359 F.3d at 319 (quoting *In re Ford Motor Co.*, 110 F.3d 954, 958 (3d Cir. 1997)). "The collateral order doctrine is 'a narrow exception to the normal application of the final judgment rule.'" *Rivera*, 333 F.3d at 150 n.16 (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989)); *see also Bell Atlantic-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 343 (3d Cir. 2001) ("Importantly, the collateral order doctrine is narrow and limited to a small class of cases.").

The parties focus their attention on whether the third *Cohen* prong is satisfied, i.e., whether the statute of limitations issue is "effectively unreviewable." BCI argues that it is because, after the Superior Court decides this matter on remand, the Virgin Islands Supreme Court will have no authority to review the Appellate Division's ruling on the statute of limitations. Appellees contend that the Appellate Division's affirmance of the Superior Court's ruling on the statute of limitations remains reviewable despite remand because, contrary to BCI's contention, "[t]he Supreme Court, upon review of the final decision of the Superior Court, will have the full right of an appellate court to review any

16

legal error asserted by any party, and there is neither statutory nor case law to the contrary." (Appellees' Ans. Br. at 11.)

In *Bell Atlantic-Pennsylvania*, we addressed whether a district court's denial of the defendant's motion to dismiss based upon a statute of limitations defense was appealable under the collateral order doctrine. 273 F.3d 337. We found that the denial was not immediately appealable because it did not satisfy the third prong of *Cohen*, i.e., "it is not effectively unreviewable upon appeal from final judgment."[12] *Id.* at 346. That is because "[s]tatutes of limitations are not guarantees that suit and trial will not occur on untimely claims." *Id.* Thus, the interests protected by statutes of limitations, i.e., the prevention of liability based on stale evidence, are "not irretrievably lost if a party must wait until after final judgment to appeal the adverse ruling and to vindicate the right to be free from liability." *Id.*

The dispute here is somewhat different from *Bell Atlantic-Pennsylvania* because it is less clear that the Appellate Division's statute of limitations ruling is reviewable. As noted above, BCI argues that it is not reviewable because, after the Superior Court decides this matter on remand, the Virgin Islands Supreme Court will have no authority to review the Appellate Division's ruling on the statute of limitations and, thereafter, review by our court is merely discretionary. Implicit in this argument is the notion that the

---

[12]In so holding, we did not address whether the district court's denial of the statute of limitations defense satisfied the first two prongs of *Cohen*.

17

Virgin Islands Supreme Court would be bound by the law of the case doctrine or otherwise bound by the holdings of the Appellate Division.

"Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Id.* (quotations omitted). "[T]he law of the case doctrine does not restrict a court's power but rather governs its exercise of discretion." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998); *see also* 18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE (2d ed. 2002) § 4478, p. 667 ("Although courts are eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish."). We have noted, with respect to that discretion, that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances ... ." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (quoting *Christianson*, 486 U.S. at 817) (internal quotations omitted). We have identified three such extraordinary circumstances in which the doctrine does not apply: "(1) new evidence is available; (2) a

18

supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.*

If the Virgin Islands Supreme Court had not yet been created, any appeal from the Superior Court after remand would be taken to the Appellate Division. The Appellate Division would presumably abide by its prior rulings on issues it had decided in the first appeal, *see Gov't of the V.I. v. AT&T of V.I., Inc.*, 2009 WL 1097513, at *3 (D.V.I. Feb. 17, 2009) (applying law of the case in second appeal of issue addressed in prior appeal to the Appellate Division), and we would thereafter be able to consider those issues on appeal after final judgment, *see Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) ("Under the 'merger rule,' prior interlocutory orders ... merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." (quotations omitted)). However, because the Virgin Islands Supreme Court was created during the pendency of this appeal, any subsequent appeal from the Superior Court after remand must be taken to the Virgin Islands Supreme Court.

Although under normal circumstances the law of the case doctrine would caution against revisiting on appeal issues previously resolved by another appellate court, *see Christianson*, 486 U.S. at 816 ("[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."), here we are confronted with a situation in which there is supervening new law. Indeed, the entire appellate

19

structure in the Virgin Islands changed while this case was pending on appeal. The Virgin Islands Supreme Court was created to address matters of local law and to give the territory of the Virgin Islands more autonomy over local matters. *See BA Props., Inc. v. Gov't of the V.I.*, 299 F.3d 207, 212 (3d Cir. 2002) (recognizing "the desire for an indigenous Virgin Islands jurisprudence," and noting that such an "endeavor has proved and will continue to prove very difficult to attain until the Virgin Islands has its own appellate court composed entirely of locally appointed judges, which would essentially supplant the Third Circuit"). Thus, this case presents genuinely exceptional circumstances for disregarding the law of the case doctrine, since it would be preferable for the highest local authority to speak to the complicated issues of local property law presented by this case. In other words, as applied here, the need for local authority on local matters and respect for the autonomy of the territory outweighs the policy reasons underlying the usual application of the law of the case doctrine.[13] Given the peculiar procedural circumstances of this case, the Virgin Islands Supreme Court would not, in our view, be required to abide by the Appellate Division's ruling on the statute of limitations (or other legal issues) as law of the case.

---

[13]Although the "mandate rule," which is "a species of the law of the case doctrine, [pursuant to which] a trial court must comply strictly with the mandate directed to it by the reviewing court," *Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 203 n.13 (3d Cir. 2004) (quotations omitted), would require the Superior Court to abide by the Appellate Division's rulings on remand, the Virgin Islands Supreme Court is not a lower court subject to the Appellate Division's mandate.

Furthermore, to the extent that the Appellate Division may have misconstrued local law, which is a possibility we express no opinion on at all, it would be manifestly unjust to require the parties to be bound by that ruling if the matter should come before the Virgin Islands Supreme Court. The relationship between the federal courts and the territorial courts is, as it should be, largely governed by the precepts that govern the relationship between federal and state courts, *see* 48 U.S.C. § 1613, and, federal courts endeavor to defer to state courts' interpretations of state law, *see McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980) (noting that "[t]he State's highest court is the best authority on its own law" (quotations omitted and alteration in original)).

The law of the case therefore does not pose a bar to the Virgin Islands Supreme Court's reconsideration of the Appellate Division's rulings, if the case is ultimately appealed to that territorial court. Furthermore, under Virgin Islands law, "[u]pon an appeal from a judgment or an order, the [Virgin Islands] Supreme Court may reverse or affirm, wholly or in part, or may modify the judgment or order appealed from, *and each interlocutory judgment or intermediate or other order that it is authorized to review ... .*" V.I. CODE ANN. tit. 4, § 32(c) (emphasis added). BCI has not pointed to any legal authority, and we have found nothing, removing the Appellate Division's order from the scope of that review.

Since the Appellate Division's statute of limitations ruling would be subject to review by the Virgin Islands Supreme Court upon appeal after remand, the matter is not

"effectively unreviewable" upon final judgment. The parties' arguments will be subject

to appellate review by the highest local court in the Virgin Islands and, thereafter, subject

to our discretionary review.[14]  Accordingly, BCI cannot satisfy the third prong of the

*Cohen* test, rendering the collateral order doctrine inapplicable.[15]

---

[14]BCI analogizes to *Hodge*, 359 F.3d 312, but its reliance is misplaced. In that case, the Appellate Division entertained an interlocutory appeal from the Superior Court challenging the Superior Court's ruling on redactions to confessions that the government sought to use against the defendants at trial. *Id.* at 315. The Appellate Division vacated and remanded, and the defendants appealed to our court, arguing that the Appellate Division lacked jurisdiction to hear the interlocutory appeal and, alternatively, that the Appellate Division's decision was erroneous. *Id.* We first determined that, since the Appellate Division's order was not final, we did not have jurisdiction "in the usual sense." *Id.* at 318. However, we concluded that, pursuant to the collateral order doctrine, we possessed jurisdiction to consider only the issue of the Appellate Division's jurisdiction over the initial appeal. *Id.* at 321-22. We reasoned that, in light of the procedural circumstances of the case, the appeal was essentially our only opportunity to address the issue because "only in the most convoluted and improbable of hypotheticals will the jurisdictional issue presented here ever make its way to this Court on appeal from a final decision." *Id.* at 321 (footnote omitted); *see id.* at 321-22 ("As a procedural matter, now is this Court's only opportunity to pass on the issue."). The instant case is distinguishable, however, because, as discussed above, this is not BCI's only opportunity for appellate review of the Appellate Division's opinion.

[15]Because BCI cannot meet *Cohen*'s third prong, we need not address whether the other two *Cohen* prongs are satisfied. Similarly, we need not address BCI's argument that, if the collateral order doctrine provides for our jurisdiction over its statute of limitations argument, we should apply the doctrine of pendent appellate jurisdiction to address the appeal in its entirety. However, we note that BCI's argument as to pendent appellate jurisdiction is inherently inconsistent with its collateral order argument because, if the statute of limitations question is "completely separate from the merits of the dispute" for purposes of satisfying the second *Cohen* prong, it cannot logically be inextricably intertwined with the remaining portions of the Appellate Division's order so as to render application of pendent appellate jurisdiction appropriate. *See E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 203 (3d Cir. 2001) ("[W]e have defined pendent appellate jurisdiction to ... [permit review of] inextricably intertwined orders or review of the non-appealable order where it is

C.  *Section 1292(a)(1) and Appellate Standing*

Finally, BCI briefly asserts that, because the Appellate Division's April 1, 2009 order vacated an injunction, the order is reviewable pursuant to 28 U.S.C. § 1292(a)(1), which allows for our jurisdiction over appeals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ... ."[16]  The appellees contend that § 1292(a)(1) is inapplicable because the issues raised by BCI on appeal do not challenge the Appellate Division's vacatur of the injunction.  We agree with what we take to be appellees' central point: namely, that, even if we possess jurisdiction under § 1292(a)(1), BCI lacks standing to appeal the vacatur of the injunction against it.[17]  Thus, to the extent that appellees are asserting that BCI lacks standing to bring this appeal because it is not a

necessary to ensure meaningful review of the appealable order.").

[16]Appellees do not address this argument in their answering brief, likely because it only appears in a footnote in BCI's brief.  Accordingly, we requested supplemental briefing from the parties, asking them whether BCI had waived its § 1292(a)(1) argument, and, if not, whether and to what extent we possess jurisdiction pursuant to that provision.  We conclude that, whether or not BCI adequately raised the § 1292(a)(1) argument, we must address it as part of our independent obligation to assess our own jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts ... have an independent obligation to determine whether subject-matter jurisdiction exists ... .").

[17]Appellees do not specifically mention appellate standing in their supplemental brief.  However, they assert that "a litigant that has no objection to the district court's decision to vacate an injunction below cannot be heard to argue that an interlocutory appeal is somehow necessary ... ."  (Appellees' Supp. Br. at 4.)  What they are effectively arguing is that BCI is insufficiently aggrieved by the Appellate Division's order to support a right to appeal.

party aggrieved by the portion of the Appellate Division's order vacating the injunction, their argument is well-taken.

We may address standing without ascertaining whether we possess subject matter jurisdiction pursuant to § 1292(a)(1) because "[j]urisdiction is vital only if [we] propose[] to issue a judgment on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quotations omitted); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (indicating that federal courts may "choose among threshold grounds for denying audience to a case on the merits"). "In order to have standing to appeal[,] a party must be aggrieved by the order of the district court from which it seeks to appeal." *IPSCO Steel (Ala.), Inc. v. Blaine Const. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004) (quotations omitted). In general, "if a court grants the ultimate relief a party requested, even though on grounds other than those urged by the prevailing party, that party is generally not 'aggrieved' by the judgment and may not appeal." *Concerned Citizens of Cohocton Valley, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 127 F.3d 201, 204 (2d Cir. 1997); *cf. California v. Rooney*, 483 U.S. 307, 310 (1987) ("This Court reviews judgments, not statements in opinions." (quotations omitted)); *EEOC v. Commonwealth of Pa.*, 768 F.2d 514, 516 n.1 (3d Cir. 1985) (dismissing cross-appeal because "the cross-appeal is not from the order of judgment, but rather from reasoning of the district court that was not essential to the judgment"). Similarly, "[a] party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of

24

findings he deems erroneous which are not necessary to support the decree."[18] *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939).

As one of our sister circuits has recognized, the "party aggrieved" concept should be accorded "a practical rather than hypertechnical meaning." *Custer v. Sweeney*, 89 F.3d 1156, 1164 (4th Cir. 1996) (quotations omitted) (cited favorably in *Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir. 1999)). Thus, "[a] party may be aggrieved by a district court decision that adversely affects its legal rights or position vis-a-vis other parties in the case or other potential litigants, [although] a desire for better precedent does not by itself confer standing to appeal." *Id.* (quotations omitted); *see also Watson v. City of Newark*, 746 F.2d 1008, 1010-11 (3d Cir. 1984) (explaining that a prevailing party may not appeal dictum). In order to cabin such an approach, the order appealed from must present an actual adverse effect as opposed to a merely hypothetical possibility. *See Custer*, 89 F.3d at 1164; *see also* 15A FEDERAL PRACTICE AND PROCEDURE § 3902, p. 87 ("It is difficult to believe that prevailing party appeals should often be accepted on the theory that unnecessary findings may have adverse practical consequences.").

---

[18]The corollary to that rule is that, "when the prevailing party is aggrieved by the collateral estoppel effect of a district court's rulings" that party has standing to pursue an appeal of those rulings. *Dolenc v. Love*, 40 F.3d 656, 657 (3d Cir. 1994) (quotations omitted).

BCI contends that it is aggrieved by the Appellate Division's order because the order "arguably invites the trial court on remand to re-issue the injunction under an unpled theory [implied dedication] that is not recognized by Virgin Islands law." (Appellant's Supp. Br. at 4.) In other words, BCI successfully achieved vacatur of the injunction against it, but not for the reasons nor, perhaps, with the permanence that it wanted. BCI seems to perceive its victory as hollow because it views the Appellate Division's mandate as implicitly instructing the Superior Court to use implied dedication – a theory that apparently was not pursued at trial – as a means for determining whether appellees satisfied their burden that the disputed roadway is public. In other words, BCI claims to be aggrieved not by the order of the Appellate Division but by the anticipated effect, on remand, of the Appellate Division's opinion on the resolution of its case.

Although the Appellate Division's opinion, in endeavoring to explain why the theories relied upon by the Superior Court failed to support the judgment, attempted to clarify the law governing the establishment of a public road, its mention of implied dedication was not necessary to its judgment. It is possible that the Superior Court might, on remand, conclude that the road is public under an implied dedication theory, but such a result is certainly not a foregone conclusion. On remand, BCI is still free to argue that appellees waived any argument based upon the theory of implied dedication as a result of their failure to plead or pursue such a theory at trial. If the Superior Court accepts such an argument, the harm claimed by BCI will never materialize because no injunction will

26

be imposed on that legal basis. It is also possible that, upon remand, the Superior Court will enter judgment in BCI's favor, finding that the disputed roadway is not public under any theory. Furthermore, although BCI challenges the Superior Court's description of the portion of the disputed roadway that it found to be public, the Appellate Division's vacatur of the Superior Court's judgment means that, as of now, no portion of the road has been found to be public.

Since the only apparent adverse impact that BCI might experience is hypothetical, if we were to opine on whether implied dedication is a valid means of establishing a public road under Virgin Islands law, we would run the risk of issuing nothing more than an advisory opinion. Likewise, any opinion on the proper boundaries of the disputed roadway which may be determined to be public would be inappropriate because the Superior Court may, on remand, find that appellees have failed to prove that the road is public. Or, that court might review the evidence and make a finding more favorable to BCI. Review at this point, therefore, is simply premature. *See Rooney*, 483 U.S. at 312-13 (dismissing state's appeal of denial of suppression motion as improvidently granted, despite state's argument that it would be precluded from using evidence at trial in light of lower court's analysis, because "[t]here are ... too many 'ifs' ... to make our review appropriate at this stage.").

Since BCI is insufficiently aggrieved by the Appellate Division's vacatur of the permanent injunction, it lacks standing to pursue its appeal of that portion of the April 1,

2009 order.[19]  Accordingly, we must dismiss for lack of appellate standing BCI's appeal of the vacatur of the injunction.

## III.    Conclusion

We lack jurisdiction pursuant to 48 U.S.C. § 1613a(d) over the Appellate Division's order to vacate and remand because the order is not final, and we decline to construe that provision to expand our review of local appeals.  Nor does the collateral order doctrine provide for our jurisdiction over the statute of limitations question because that issue is not effectively unreviewable.  In addition, BCI lacks standing to appeal the portion of the Appellate Division's order that vacates the permanent injunction issued by the Superior Court.  Accordingly, we will dismiss this appeal for lack of jurisdiction and lack of appellate standing.

---

[19]Although BCI is aggrieved by the portion of the Appellate Division's order affirming the Superior Court's denial of its motion for summary judgment, there would be no basis for our jurisdiction over that portion of the order, even if we had jurisdiction under § 1292(a)(1), because our jurisdiction would be limited to those issues pertaining to the merits of the injunction.  *See Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (en banc) (explaining that if "the appellate court can dispose of the section 1292(a)(1) appeal without venturing into otherwise nonreviewable matters, its jurisdiction should be limited accordingly"  (footnote omitted)); *see also* 16 FEDERAL PRACTICE AND PROCEDURE § 3921.1, p. 25 ("Ordinarily the scope of appellate review under § 1292(a)(1) is confined to the issues necessary to determine the propriety of the interlocutory order itself.").