**LAWRENCE HODGE, MARIA HODGE, and GOVERNMENT OF THE VIRGIN ISLANDS, Appellants/Plaintiffs**

**v.**

**BLUEBEARD'S CASTLE, INC., Appellee/Defendant**

S. Ct. Civil No. 2012-0087
Consolidated Cases: S. Ct. Civil Nos. 2012-0087, 2012-0123

Supreme Court of the Virgin Islands

June 10, 2015

673

674

MARIA T. HODGE, ESQ., MARK D. HODGE, ESQ., Law Offices of Hodge & Hodge, St. Thomas, USVI, *Attorneys for Appellants Lawrence Hodge and Maria Hodge.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellant Government of the Virgin Islands.*

STEFAN B. HERPEL, ESQ., GREGORY H. HODGES, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorneys for Appellee.*

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice.*[1]

## OPINION OF THE COURT

(June 10, 2015)

CABRET, *Associate Justice.* In 2002, the Superior Court of the Virgin Islands[2] held that a road providing access to property owned by Maria Hodge and Lawrence Hodge is a public right-of-way and issued a declaratory judgment and permanent injunction preventing Bluebeard's Castle, Inc. ("BCI"), from blocking the Hodges' access to the road. On appeal, the United States District Court of the Virgin Islands — sitting in its former appellate capacity — vacated the Superior Court's order and remanded. On remand, the Superior Court changed course, finding that the road is not a public right-of-way. The Hodges now appeal to this Court, arguing that we should reverse the District Court and reinstate the Superior Court's 2002 order. Because we agree that the District Court misapplied Virgin Islands law in vacating the Superior Court's 2002 order

---

[1] Chief Justice Rhys S. Hodge is recused from this matter. This Court designated the Honorable Douglas A. Brady, Judge of the Superior Court of the Virgin Islands, to sit in his place as provided for in 4 V.I.C. § 24(a).

[2] Before October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b)) (amending 4 V.I.C. § 2 by substituting "Superior" for "Territorial" in the name of the local trial court). Nevertheless, we refer to the former Territorial Court by its current name to avoid confusion.

and remanding for further proceedings, we vacate the District Court's order and the Superior Court's post-remand orders, and reinstate the Superior Court's original 2002 order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bluebeard's Castle Hotel — owned by BCI — is on Bluebeard's Hill on St. Thomas. To the west of the hotel is Frederiksberg Gade, a public road, and to the south is Beltjen Road, another public road. The hotel is connected to Frederiksberg Gade by a road running up Bluebeard's Hill that is referred to in the record alternatively as "Vy til Frederiksberg," or the entrance road to Bluebeard's Castle. This road connects with a road running directly south of the hotel through the hotel parking lot, which in turn connects with a road leading down the other side of the hill to meet Beltjen Road. The road leading down the other side of the hill connecting with Beltjen Road is referred to in the record as the "cable TV road," or the hotel exit road. This right-of-way in its entirety from Frederiksberg Gade to Beltjen Road is referred to in the record as "the disputed road." The disputed road provides the only access to Parcel 39C in Estate Taarneberg.

Parcel 39C was created in July 1917, when the larger Parcel 39A was divided in two, creating a new Parcel 39C to the north accessible only through the disputed road, and leaving the remainder of Parcel 39A to the south accessible through Beltjen Road. The West Indian Company then bought Parcel 39C in 1919. In 1939, it built a house and garage on the property, where its employees lived until the house burned down in 1981, leaving only the garage intact. The company then sold the property to Maria Hodge and Lawrence Hodge in 1985.

Lawrence Hodge used the garage to store equipment, accessing it from Frederiksberg Gade through the disputed road without incident until 1994, when BCI constructed a gate across the entrance road near the intersection with Frederiksberg Gade, preventing the Hodges from reaching Parcel 39C from Frederiksberg Gade when closed. Initially, BCI closed the gate daily between 12:00 a.m. and 5:00 a.m., but closed it permanently in 1996, forcing the Hodges to approach from Beltjen Road by taking the exit road and driving through the hotel parking lot to reach

Parcel 39C from the east. In 1997, BCI blocked this route as well, placing a chain and a "do not enter" sign where the hotel parking lot met the entrance road, rendering Parcel 39C and the entire length of the entrance road inaccessible.

After BCI blocked access to Parcel 39C entirely, the Hodges filed a complaint against BCI in the Superior Court on November 26, 1997, alleging that the disputed road is, and always has been, a public road, used for over 80 years to access Parcel 39C, and that BCI created a nuisance by blocking access to the road. Alternatively, the Hodges asserted that because the disputed road provided them the only access to their property, they had the right to an easement by prescription. On October 18, 2001, the Government of the Virgin Islands filed a motion to intervene "in order to protect its interest and that of the people of the Virgin Islands in what the Government deems as a public road known as Frederiksberg Gade or Fredericksberg Vy in Estate Taarneberg." The Superior Court granted this motion on October 29, 2001. The Government then filed its own complaint, alleging that "[f]or decades, said road served as a public access road to [the Hodges'] and other privately owned parcels . . . and as a public means of access to [BCI's] property," and that the Government maintained the road and posted signs regulating traffic. The Government alleged that BCI did not have the right to block off the road and did not have permission from the Virgin Islands Department of Public Works ("DPW") to do so. In a survey map later introduced by the Government at trial, Bluebeard's Hill was depicted as follows:

The portion of the parcel labeled "39a" marked in pink is Parcel 39C. The blue line near the intersection of Frederiksberg Gade and the entrance road indicates where BCI erected the gate in 1994, and the blue line to the right indicates where BCI placed the chain and "do not enter" sign in 1997, preventing access to the entrance road from the hotel parking lot.

After the Government's intervention, the Superior Court denied BCI's motion for summary judgment on April 17, 2002, holding that there were genuine issues of material fact regarding the status of the road and rejecting BCI's argument that the statute of limitations barred the Hodges' action. *Hodge v. Bluebeard's Castle, Inc.*, 44 V.I. 242, 247-55 (V.I. Super. Ct. 2002).

The Superior Court held trial from May 28, 2002, to June 3, 2002. In accordance with the parties' stipulation, the Superior Court determined the road's status, with a jury sitting in an advisory capacity on this

question, but serving as the finder of fact regarding the Hodges' nuisance claims. Following trial, the jury found that the disputed road is a public right-of-way and that BCI maintained a public and private nuisance when it blocked the road. The jury awarded the Hodges $6,000 in compensatory damages and $1.00 in punitive damages.

In its June 17, 2002 findings of fact and conclusions of law, the Superior Court agreed with the jury's advisory finding that the disputed road is a public right-of-way and has been since at least 1912. The Superior Court held that even without evidence that the road was established as a public right-of-way as provided in the Virgin Islands Code, the road was public because it was a public right-of-way before the transfer of the Virgin Islands from Denmark to the United States in 1917, and there was "no convincing evidence [that] the disputed roadway [was] conveyed to a private party." The Superior Court also credited evidence that the road is widely regarded as public by the community and has been for decades, and that DPW paved and maintained the road and regulated traffic by posting street signs and establishing speed limits. As a result, the Superior Court ruled in the Hodges' favor, issuing a declaratory judgment and a permanent injunction preventing BCI from blocking the road. The Superior Court later awarded the Hodges $116,008.90 in attorney's fees and costs in a July 22, 2002 order.

BCI appealed the Superior Court's ruling to the Appellate Division of the United States District Court of the Virgin Islands on July 26, 2002, which issued an opinion nearly seven years later on April 1, 2009. *Bluebeard's Castle, Inc. v. Hodge*, 51 V.I. 672 (D.V.I. App. Div. 2009). In its opinion, the Appellate Division affirmed the Superior Court's denial of summary judgment, but noted that "we cannot be certain that [the Hodges and the Government] were held to their burden of proof" in establishing that the disputed road is public, because "absent from the [Superior Court's] opinion is a clear articulation and application of the legal standard governing the establishment of a public road." *Id.* at 690. The Appellate Division found "no support for the [Superior Court's] conclusion that the [d]isputed [r]oad[] is public because it was public at the time of the transfer of the Virgin Islands from Denmark to the United States," and "[t]o the extent that conclusion derives from the testimony of the Hodges' expert witness, Robert Murnan" — who testified at trial as an expert in real estate law — "the record offers us no basis on which to determine whether Murnan was appropriately qualified as an expert or

whether the methods he used were reliable" under Federal Rule of Evidence 702. *Id.* at 693-94. The Appellate Division also held that the Superior Court abused its discretion in awarding attorney's fees. *Id.* at 700.

Because of these perceived deficiencies, the Appellate Division vacated[3] the Superior Court's June 17, 2002 order, as well as the July 22, 2002 order awarding attorney's fees, and remanded for further proceedings. *Id.* at 694-95 & n.15. BCI attempted to appeal the Appellate Division's ruling to the United States Court of Appeals for the Third Circuit, seeking an outright reversal of the Superior Court without remand, but the Third Circuit dismissed the appeal because the Appellate Division's remand order was not "final" as required for the Third Circuit to exercise jurisdiction under 48 U.S.C. § 1613a(c). *Hodge v. Bluebeard's Castle, Inc.*, 392 Fed. Appx. 965, 971-76 (3d Cir. 2010).

On remand, the Superior Court issued an April 16, 2012 opinion and order in response to the Appellate Division's mandate. *Hodge v. Bluebeard's Castle, Inc.*, 56 V.I. 59 (V.I. Super. Ct. 2012). The 2012 opinion — issued by a different Superior Court judge — reexamined the evidence from the 2002 trial and concluded that there was no evidence that the road was formally dedicated to public use under 20 V.I.C. § 3a or implicitly dedicated at common law. *Id.* at 65-72. The Superior Court also found that the Hodges and the Government failed to establish the existence of a public or private prescriptive easement over the road. *Id.* at 72-74.

After the Superior Court denied the Hodges' motion to set aside the judgment on August 24, 2012, they filed a timely notice of appeal with this Court on August 27, 2012. *See* V.I.S.Ct.R. 5(a)(4). BCI then filed a timely cross-appeal challenging the Superior Court's denial of its motion for summary judgment in 2002 and the Appellate Division's order that remanded the case instead of ordering an outright reversal of the Superior Court's June 17, 2002 order. BCI later filed a timely notice of appeal challenging the Superior Court's October 4, 2012 order denying its motion for attorney's fees and costs against the Hodges and the Government on November 5, 2012. *See Hodge v. Bluebeard's Castle,*

---

[3] The Appellate Division's opinion initially stated that it was reversing the Superior Court's June 17, 2002 order, but later in the opinion and in the accompanying order, the court clarified that it was vacating the Superior Court's order. 51 V.I. at 700.

*Inc.*, Super. Ct. Civ. No. 125/1997 (STT), 2012 V.I. LEXIS 51 (V.I. Super. Ct. Oct. 4, 2012) (unpublished). This Court then granted the Government's motion to be excused from participating in the Hodges' appeal of the Superior Court's April 16, 2012 order and consolidated these appeals.

## II. JURISDICTION

In the 1984 amendments to the Revised Organic Act of 1954 — the *de facto* constitution for the Virgin Islands[4] — Congress authorized the Virgin Islands Legislature to end the District Court's role as a territorial court by divesting it of jurisdiction over actions brought under Virgin Islands law that do not fall within the District Court's federal question, diversity, or supplemental civil and criminal jurisdiction.[5] 48 U.S.C. § 1612(a)-(c). These amendments also created the Appellate Division of the District Court to review decisions of the Superior Court in three-judge panels, but provided that the District Court's appellate jurisdiction over the Superior Court would end once the Legislature created a local appellate court to assume jurisdiction over appeals from the Superior Court. 48 U.S.C. §§ 1611(a), 1613a(b).

The Legislature implemented the 1984 amendments incrementally. On September 5, 1990, it passed Act No. 5594, granting the Superior Court "original jurisdiction in all civil actions regardless of the amount in controversy," effective October 1, 1991. 4 V.I.C. § 76(a); 1990 V.I. Sess. Laws 271. The Legislature then passed Act No. 5890 on September 30, 1993, granting the Superior Court "original jurisdiction in all criminal actions," effective January 1, 1994. 4 V.I.C. § 76(b); 1993 V.I. Sess. Laws

---

[4] Congress authorized the Virgin Islands to adopt its own constitution in 1976. Pub. L. No. 94-584, §§ 1-3, 90 Stat. 2899. After five attempts, the Territory has yet to do so. *See* Pub. L. No. 111-194, § 1(2), 124 Stat. 1309 (joint resolution returning the draft Virgin Islands constitution to the Fifth Constitutional Convention and urging it "to reconvene for the purpose of reconsidering and revising the proposed constitution in response to the views of the executive branch of the Federal Government"); *see generally St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 325-26 (V.I. 2007); *James v. de Jongh*, 52 V.I. 202, 204-06 (V.I. Super. Ct. 2009).

[5] The District Court now exercises the same jurisdiction as any other federal district court, with a few exceptions such as continuing concurrent jurisdiction with the Superior Court over local crimes that are related to federal crimes and proceedings related to the income tax laws of the Virgin Islands. 48 U.S.C. § 1612(a)-(c); *see also Bryan v. Fawkes*, 61 V.I. 201, 219 n.8 (V.I. 2014); *United States v. Gillette*, 738 F.3d 63, 71, 60 V.I. 855 (3d Cir. 2013).

214. Finally, in Act No. 6687 on October 29, 2004, the Legislature provided for the creation of the Supreme Court of the Virgin Islands, which officially assumed jurisdiction on January 29, 2007. *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009); 2004 V.I. Sess. Laws 179; 48 U.S.C. § 1611(a) ("The judicial power of the Virgin Islands shall be vested . . . in such appellate court and lower local courts as . . . established by local law.").[6]

■ By creating this Court, the Legislature completed the process of establishing a local judicial system to operate independently of the District Court and Third Circuit. And with the exception of the Third Circuit's temporary certiorari jurisdiction over this Court, Congress intended for the relationship between Virgin Islands courts and federal courts to mirror that between state and federal courts. 48 U.S.C. § 1613; *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360, 49 V.I. 1133 (3d Cir. 2007) ("Now that [48 U.S.C.] § 1613 mandates that the relations between [federal] courts . . . and [Virgin Islands] courts . . . mirror the relations between state and federal courts, . . . § 1613 makes the *Erie* doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands."); *Bryan v. Fawkes*, 61 V.I. 416, 437-45 (V.I. 2014) (outlining the relationship between local and federal courts).

■ So when BCI appealed the Superior Court's judgment in 2002, that appeal went to the Appellate Division of the District Court. And because "Congress provided that the Appellate Division would retain jurisdiction over any appeal filed with it before this Court assumed jurisdiction," the Appellate Division was able to issue its order vacating and remanding the case to the Superior Court in 2009. *Percival v. People*, 62 V.I. 477, 487 n.2

---

[6] Although this section also still provides that the "judicial power of the Virgin Islands shall be vested in . . . the 'District Court of the Virgin Islands,' " because the Legislature vested the Superior Court with original jurisdiction over all local actions, the District Court no longer exercises the judicial power of the Virgin Islands. *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359-61, 49 V.I. 1133 (3d Cir. 2007) ("Edwards errs when he argues that the District Court of the Virgin Islands still remains vested with the judicial power of the [T]erritory." (internal quotation marks omitted)); *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 754-56 & n.9 (V.I. 2014). Instead, when confronted with an issue of Virgin Islands law, the District Court — like the Third Circuit — predicts how this Court would resolve the issue. *Walters v. Walters*, 60 V.I. 768, 777 n.10 (V.I. 2014); *Edwards*, 497 F.3d at 361 n.3; *Mendez v. HOVENSA, LLC*, 49 V.I. 826, 835 (D.V.I. 2008); *Gumbs-Heyliger v. CMW & Assocs. Corp.*, Civ. No. 2012-00078, 2014 U.S. Dist. LEXIS 160451, *18 (D.V.I. Nov. 13, 2014) (unpublished).

(V.I. 2015) (citing 48 U.S.C. § 1613a(d)). After the Appellate Division orders a remand, determining whether the appeal remains pending in the Appellate Division under 48 U.S.C. § 1613a(d) — and accordingly must return there after the Superior Court complies with the remand mandate — depends on whether the Appellate Division ordered a case remand or a record remand. As we explained in *Hypolite*:

> In a record remand, . . . jurisdiction over the case remains with [the appellate] court, but the record [alone] is returned to the trial court. In those circumstances, the trial court may be directed to clarify or amplify some portion of the record, to make additional findings, to hear further testimony, or to explain a ruling. The point of such a remand is to give the trial judge the opportunity to complete or clarify the record so that [the appellate] court will have an adequate basis for review of the trial court's rulings. The trial court does not, however, have the authority to amend the ruling that is on appeal. A "case" remand, on the other hand, returns the case to the trial court for all purposes. [The appellate] court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in [the appellate] court, is to file a new notice of appeal, once a final order or judgment is entered. That appeal is a new appeal, separate from the previous appeal that was terminated when the case was remanded.

*Hypolite*, 51 V.I. at 102-03 (quoting *Hodge v. McGowan*, 50 V.I. 296, 305 n.4 (V.I. 2008)); *see also Simon v. Gov't of the V.I.*, 679 F.3d 109, 113-14, 56 V.I. 990 (3d Cir. 2012) ("A case remains 'pending' before the District Court [for the purposes of 48 U.S.C. § 1613a(d)] if the remand was a record remand.").

As this Court previously explained, "after it issued its *Bluebeard's Castle* opinion, the Appellate Division . . . issued a mandate and closed the case on June 5, 2009, which is consistent with a case remand and not a record remand." *Martinez v. Stridiron*, S. Ct. Civ. No. 2011-0014, 2011 V.I. Supreme LEXIS 22, *15 (V.I. Mar. 22, 2011) (unpublished); *see also V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 218 (V.I. 2013) (expressly setting aside a decision on appeal and remanding for further proceedings "is the quintessential hallmark of a case remand"). Therefore, in seeking review of a final judgment issued in the Superior Court's post-remand proceedings, the parties were required

to file new appeals, over which only this Court has jurisdiction. 48 U.S.C. § 1613a(d) ("Upon the establishment of the [Supreme Court,] all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court."). And since the Superior Court's April 16, 2012 order was a final order "disposing of all . . . claims submitted . . . for adjudication," for the purposes of 4 V.I.C. § 32(a), this Court has jurisdiction over the Hodges' and BCI's appeals. *St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 472-73 (V.I. 2014). Likewise, the Superior Court's October 4, 2012 order denying BCI's motion for attorney's fees was a final order over which we have jurisdiction. *Kalloo v. Estate of Small*, 62 V.I. 571, 577 (V.I. 2015) (citing *In re Guardianship of Smith*, 58 V.I. 446, 449 (V.I. 2013)).

█ In addition to this Court's jurisdiction over all final judgments of the Superior Court entered after January 29, 2007, this Court "may reverse or affirm, wholly or in part . . . each interlocutory judgment or intermediate or other order that it is authorized to review." 4 V.I.C. § 32(c). Thus, "[i]t is well established that prior interlocutory orders" — such as a remand order — "merge with the final judgment . . . and . . . may be reviewed on appeal from the final order." *In re Estate of George*, 59 V.I. 913, 919 (V.I. 2013) (internal quotation marks and citation omitted); *see Gov't of the V.I. v. Crooke*, 54 V.I. 237, 245 (V.I. 2010) (explaining that an order remanding a case is not a final order).

Despite this, BCI asserts that this Court does not have the authority to review the Appellate Division's remand order. BCI raised a similar argument with the Third Circuit, insisting that "after the Superior Court decides this matter on remand, the Virgin Islands Supreme Court will have no authority to review the Appellate Division's ruling," rendering it "effectively unreviewable."[7] 392 Fed. Appx. at 973 (recounting BCI's arguments). In rejecting this argument, the Third Circuit noted that 4 V.I.C. § 32(c) authorizes this Court to review all interlocutory orders on appeal of a final judgment, including the Appellate Division's April 1, 2009 order remanding this case. 392 Fed. Appx. at 975.

---

[7] BCI made this argument specifically with regard to its statute-of-limitations defense, which the Superior Court rejected in denying BCI's motion for summary judgment in 2002, *see* 44 V.I. at 251-55, a ruling the Appellate Division affirmed in the first appeal. 51 V.I. at 683-89. Despite this, BCI does not make any arguments regarding the statute of limitations in this appeal, and therefore this issue is waived. V.I.S.CT.R. 22(m).

■ We agree that we have jurisdiction over the Appellate Division's remand in this case, as nothing prevents this Court from reviewing it like any other interlocutory order under section 32(c). We recognize that 48 U.S.C. § 1613 incorporates principles of federalism into the Virgin Islands Judiciary — the same federalism that would typically prevent a state court from setting aside an order issued by a federal district court. *See Bryan*, 61 V.I. at 456 (setting aside an order of the District Court only after concluding that it exceeded its jurisdiction in granting relief directly contrary to orders from this Court denying the same relief to the same party); *cf. Faulkner v. State*, 226 S.W.3d 358, 363 (Tenn. 2007) (stating the general principle that a federal judgment cannot be challenged in state court). But unlike the constitutional federalism governing the relationship between state and federal courts, federalism in the Virgin Islands "is administrative rather than constitutional." *Parrott v. Gov't of the V.I.*, 230 F.3d 615, 621, 43 V.I. 277 (3d Cir. 2000); *see Bryan*, 61 V.I. at 438 (explaining that this Court and the District Court are both Article IV courts deriving their authority ultimately from Congress). And "while Congress has generally chosen to treat the Virgin Islands as the equivalent of a state . . . the Virgin Islands territorial government is a subdivision of the United States government." *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 305 (V.I. 2014); *see* U.S. CONST. art. IV, § 3, cl. 2.

■ ■ Because the Virgin Islands is not a state, the administrative federalism imposed by 48 U.S.C. § 1613 does not prevent a Virgin Islands court from "exercising its revised jurisdiction to review a judgment of the District Court made under territorial law." *Parrott*, 230 F.3d at 621-24 (holding that the Superior Court can vacate a conviction entered under local law by the District Court after assuming the District Court's former jurisdiction over local actions); *see also Rivera-Moreno*, 61 V.I. at 306-07; *Callwood v. Enos*, 230 F.3d 627, 630-31, 43 V.I. 293 (3d Cir. 2000); *Walker v. Gov't of the V.I.*, 230 F.3d 82, 85-86, 43 V.I. 265 (3d Cir. 2000). Just as the District Court sat as a territorial trial court in actions brought under Virgin Islands law before the Legislature expanded the Superior Court's jurisdiction, it sat as a territorial court when it heard appeals from decisions of the Superior Court. And — like the Superior Court before us — this Court has assumed the jurisdiction once exercised by the District Court. Thus, nothing prevents this Court from "exercising its revised jurisdiction to review a judgment of the District Court made under territorial law." *Parrott*, 230 F.3d at 621-24. Accordingly, because

the Appellate Division's remand was an interlocutory order that "merge[s] with the final judgment," we have jurisdiction to review the Appellate Division's April 1, 2009 remand order as part of this appeal.[8]

## III. DISCUSSION

The Hodges argue that the Appellate Division erred in vacating the Superior Court's June 17, 2002 order and remanding for further proceedings, urging us to set aside the Appellate Division's order and reinstate the Superior Court's original order. In the alternative, they assert that the Superior Court failed to comply with the Appellate Division's mandate on remand by disregarding the original findings of fact without conducting a new trial, and that the Superior Court erred in finding on remand that the road is private property. *See* 56 V.I. at 72. BCI urges us to affirm the Superior Court's remand proceedings, and argues in the alternative that the Superior Court committed error in 2002 by finding that both the entrance road and the exit road are public, when only the entrance road connecting Frederiksberg Gade and the hotel parking lot was at issue during trial. Finally, BCI argues that we should reverse the Superior Court's October 4, 2012 order denying its motion for attorney's fees because BCI is the prevailing party in these proceedings.

---

[8] BCI also argues that only the Government has standing to claim that the disputed road is public, and because the Government is no longer participating in this case, the Hodges lack standing to bring this appeal. But as the Hodges correctly point out, standing is at best a non-jurisdictional claims-processing rule in Virgin Islands courts, since Article III of the United States Constitution does not apply to local courts and no provision of Virgin Islands law includes a case-or-controversy requirement. *Malloy v. Reyes*, 61 V.I. 163, 171 n.4 (V.I. 2014) (rejecting any standing concerns on appeal in a case brought against the Government by a landowner seeking access to a public right-of-way). Therefore, by failing to raise this issue "at the first opportunity prior to the case becoming fully briefed," BCI has waived it. *In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010); *see also V.I. Narcotics Strike Force*, 60 V.I. at 212 ("[B]y failing to raise the standing issue until this appeal, [the appellant] has waived its argument."). BCI also insists that the Superior Court implicitly held that the Hodges did not have standing when it granted the Government's motion to intervene as of right, claiming that because the Hodges failed to appeal the Superior Court's order granting the Government's motion to intervene, this Court somehow lacks appellate jurisdiction. But it should go without saying that simply allowing the Government's intervention had nothing to do with the Hodges' ability to bring this case. *See generally In re Q.G.*, 60 V.I. 654, 659 n.5 (V.I. 2014).

687

## A. Appellate Division Remand

The Hodges argue that the Appellate Division erred in disregarding the Superior Court's 2002 finding that the disputed road was public before 1917 because that finding was not clearly erroneous. The Hodges also fault the Appellate Division for holding that the Superior Court erred in allowing Murnan to testify as an expert at trial without conducting a hearing to determine the reliability of his testimony under Federal Rule of Evidence 702. We agree on both points. But before reaching the merits of the Hodges' arguments, we must first clarify that, as the Third Circuit stated in dismissing BCI's appeal, this Court is not "required to abide by the Appellate Division's ruling . . . as [the] law of the case" in this appeal. 392 Fed. Appx. at 975.

### 1. *Law of the case*

■ Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)); *see also Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("[A] court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case."). "This doctrine directs a court's discretion, [but] it does not limit the tribunal's power," *Pepper*, 562 U.S. at 506 (internal quotation marks omitted), and this Court has yet to examine the extent to which this doctrine applies in Virgin Islands courts. *But see Dowdye v. People*, 60 V.I. 806, 818 (V.I. 2014) (Moore, J., concurring in result only). But even if we were to adopt some form of the law-of-the-case doctrine with regard to this Court's decisions, treating the Appellate Division's remand as the law of the case would be inappropriate here.

■ This is because the Supreme Court of the Virgin Islands, as the Territory's court of last resort, is the successor to the Third Circuit in the Virgin Islands Judiciary. *Defoe v. Phillip*, 702 F.3d 735, 743 (3d Cir.) ("[T]he Supreme Court has assumed our erstwhile role as the final authority on territorial law."), *aff'g* 56 V.I. 109 (V.I. 2012). By contrast, the role of the Appellate Division of the District Court in the Virgin Islands Judiciary — that of an intermediate appellate court — "will cease

existence when the last [Appellate Division] case pending is decided."
*Edwards*, 497 F.3d at 359 n.2;[9] *see also BA Properties, Inc. v. Gov't of
the V.I.*, 299 F.3d 207, 211-12 (3d Cir. 2002) (rejecting the Appellate
Division's holding that it was a territorial appellate court that the Third
Circuit must defer to on matters of local law since that role could only be
assumed by an "appellate court composed entirely of locally appointed
judges, which would essentially supplant the Third Circuit").

■ This remains true despite the temporary certiorari jurisdiction the
Third Circuit exercised over this Court in "cases commenced" before
December 28, 2012.[10] At first glance, this somewhat similar appellate
structure would appear to place this Court in the same position as the
Appellate Division — an intermediate appellate court under the Third
Circuit. But that is not the case, as parties could appeal by right from the
Appellate Division to the Third Circuit, with the Third Circuit exercising
plenary review over the Appellate Division's decisions on both federal
and local law, *see BA Properties Inc.*, 299 F.3d at 212 — in the same
manner any federal court of appeals reviews a federal district court. On
the other hand, the Third Circuit's certiorari jurisdiction over this Court
was much more limited, as it is "the role of the Virgin Islands Supreme
Court to say what the law of the [T]erritory is," leaving the Third Circuit
with the ability to "reverse a decision of the Supreme Court of the Virgin
Islands that is based upon territorial law only if it is inescapably wrong."
*Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 94, 53 V.I. 936 (3d Cir.
2010); *see also Defoe*, 702 F.3d at 744 (describing this as a "manifest
error" standard). Thus, notwithstanding this limited certiorari jurisdiction
to review this Court's decisions on local law for manifest error, "it is plain

---

[9] The District Court's appellate jurisdiction over the Superior Court ended more than eight
years ago, but many appeals remain pending.

[10] Originally, 48 U.S.C. § 1613 provided that the Third Circuit would exercise certiorari
jurisdiction over this Court "for the first fifteen years following [its] establishment." But on
December 28, 2012 — following the recommendation of the Third Circuit Judicial Council
— President Barack Obama signed H.R. 6116 into law, ending the Third Circuit's certiorari
jurisdiction 10 years early. Despite this, the Third Circuit recently held that the effective date
of this legislation — "apply[ing] to cases commenced on or after" December 28, 2012,
Pub. L. No. 112-226, § 3 — referenced the date a case was commenced by filing a complaint
in the Superior Court of the Virgin Islands, as opposed to the date a case is commenced in the
Third Circuit seeking a writ of certiorari to the Supreme Court of the Virgin Islands. *UIW-SIU
ex rel. Bason v. Gov't of the V.I.*, 767 F.3d 193, 206 (3d Cir. 2014), *cert. denied* 135 S. Ct. 1734
(2015).

that Congress intended for [the Third Circuit's] certiorari jurisdiction vis-à-vis the Virgin Islands Supreme Court to mirror the United States Supreme Court's certiorari jurisdiction vis-à-vis any of the fifty state courts of last resort." *People of the V.I. v. John*, 654 F.3d 412, 415, 55 V.I. 1324 (3d Cir. 2011), *aff'g* 52 V.I. 247 (V.I. 2009).

■ So while the law-of-the-case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988), the Appellate Division of the District Court cannot be considered a "coordinate court" of this Court. And "[t]he law of the case principle is not applied to prevent a higher court from considering the correctness of a ruling by an intermediate appellate court." *Levine v. First Nat. Bank of Commerce*, 948 So. 2d 1051, 1057 (La. 2006); *see Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214, 48 V.I. 1034 (3d Cir. 2007) (concluding that "[w]hile the Appellate Division would likely be bound by . . . the law of the case doctrine" in a subsequent appeal after remanding to the Superior Court, "nothing would preclude [the Third Circuit] from considering the merits" of issues raised in both appeals); *see also Mercer v. Theriot*, 377 U.S. 152, 153, 84 S. Ct. 1157, 12 L. Ed. 2d 206 (1964); *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003); *Krautsack v. Anderson*, 223 Ill. 2d 541, 861 N.E.2d 633, 642, 308 Ill. Dec. 302 (2006); *Thompson v. Coughlin*, 329 Ore. 630, 997 P.2d 191, 193 n.5 (2000).

■ As a result, we agree with the Third Circuit's conclusion that it would be inappropriate to treat a remand issued by the Appellate Division to the Superior Court as the law of the case in a subsequent appeal to this Court.[11] For this reason, we do not defer to the Appellate Division's interpretation and application of Virgin Islands law in this case. *Accord*

---

[11] "[T]he doctrine does not apply if the court is convinced that [the] prior decision is clearly erroneous and would work a manifest injustice." *Pepper*, 562 U.S. at 506-07 (quoting *Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)) (internal quotation marks and alterations omitted). As we explain in the next section, part III.A.2, the Appellate Division misapplied Virgin Islands law in vacating and remanding the Superior Court's June 17, 2002 order. So even if we treated the Appellate Division's order as the law of the case, it would not change our conclusion. *See* 392 Fed. Appx. at 975 ("[T]o the extent that the Appellate Division may have misconstrued local law . . . it would be manifestly unjust to require the parties to be bound by that ruling if the matter should come before the Virgin Islands Supreme Court.").

690

*Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 532 n.7 (V.I. 2013) ("[D]ecisions of the Appellate Division serve only as persuasive authority on this Court.").

### 2. *Status of the disputed road before 1917*

In vacating and remanding the Superior Court's 2002 decision, the Appellate Division held that the Superior Court "did not explicitly rely on any of the traditional ways in which a public road may be created," such as "laying out and acceptance of a road" by the Government, dedication, or prescription. 51 V.I. at 692-93. The Appellate Division further explained that it found "no support for the trial court's conclusion that the [d]isputed [r]oad[ ] is public because it was public at the time of the transfer of the Virgin Islands from Denmark to the United States." *Id.* at 693. The Hodges assert that the Appellate Division's holding was erroneous because the Superior Court properly found the road to be public based on its historical status as a public right-of-way. We agree.

In reviewing the Superior Court's June 17, 2002 order, we use "the same standard of review applied by the [Appellate Division]," *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004), examining the Superior Court's conclusions of law *de novo* and its findings of fact only for clear error. *Malloy v. Reyes*, 61 V.I. 163, 173 (V.I. 2014) (citing *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013)).

 This Court recently explained that

> when a territory is transferred to the United States by a foreign country, ownership of public property transfers to the U.S. government, while private property rights remain unaffected. . . . [T]he 1916 treaty transferring the Virgin Islands from Denmark to the United States clearly followed this longstanding legal principle, providing that "[t]his cession includes the right of property in all public, government, or crown lands . . . and all other public property of every kind or description now belonging to Denmark." . . . And following the transfer, Congress provided in the Organic Act of 1936 that "[a]ll property which may have been acquired by the United States from Denmark in the Virgin Islands under the convention . . . is placed under the control of the Government of the Virgin Islands." 48 U.S.C. § 1405c(a). Later, in a 1974 amendment to the Revised Organic Act of 1954, Congress provided that "[a]ll right, title, and interest of the United States in the property placed un-

der the control of the government of the Virgin Islands by section 1405c(a) of this title . . . is hereby conveyed to such government." 48 U.S.C. § 1545(b)(1).

*Malloy*, 61 V.I. at 174-75 (footnotes and citations omitted). The Superior Court based its finding that the disputed road is public squarely on this principle of law, explaining in its June 17, 2002 findings of fact and conclusions of law that

> While the Government does not have a deed, there is substantial evidence that the disputed roadway is and has always been public. The testimony offered at trial proved that the disputed roadway has been in existence and has been used to access several parcels of land since at least 1912 — that is, before the Virgin Islands [was] ceded to the United States. Accordingly, the fact that there is no deed, proof of dedication, or evidence of condemnation proceedings is not dispositive, as urged by [BCI]. To the contrary, the evidence clearly shows that the road was already public when these local laws governing the acquisition of public lands were promulgated.
>
> It is clear that, even before 1917, some lands on St. Thomas were public. The public status of these lands was preserved . . . when the Virgin Islands [was] ceded, and title passed, to the United States of America. Later, all such property was placed under the control of, and finally was transferred to the Virgin Islands government. Because there was no convincing evidence of the disputed roadway having been conveyed to a private party, and in light of the abundant evidence of long-term use, the Court concludes that the disputed roadway was, and remains, a public road.

So even though the Appellate Division correctly observed that the Superior Court's decision "did not explicitly rely on any of the traditional ways in which a public road may be created," we agree with the Superior Court's original holding that this is irrelevant where a road was public before 1917 and was never conveyed to a private party. *Malloy*, 61 V.I. at 180-81 (holding that a road remained public where it was public before 1917 and the Government never abandoned it).

In holding that there was "no support" for this conclusion — a determination that appeared to constitute the primary reason for the remand — the Appellate Division took issue with the admission of Robert

Murnan's testimony, holding that the Superior Court erred in admitting this testimony without conducting a hearing under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), leaving "an unreviewable record." 51 V.I. at 693-94 & n.13. Such a hearing, often conducted before admitting expert testimony under Federal Rule of Evidence 702 — which the Appellate Division stated applied in the Superior Court through Superior Court Rule 7 — "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit," that must be assessed by a trial judge before expert testimony reaches the jury. *Id.* at 693-94; *but see Malloy*, 61 V.I. at 183 (the Superior Court "is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists").

■■■■ But just three weeks before the Appellate Division issued its opinion, this Court explained that the Federal Rules of Evidence did not, at that point, apply in the Superior Court because "the Legislature of the Virgin Islands . . . adopted virtually all of the 1953 version of the [Uniform Rules of Evidence]" in 1957, which must control the admission of evidence in the Superior Court. *Phillips v. People*, 51 V.I. 258, 272-76 (V.I. 2009); *see* Former 5 V.I.C. §§ 771-956 (repealed 2010). Although the Legislature later repealed the Uniform Rules of Evidence, replacing them with the Federal Rules of Evidence, *see V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 368 n.13 (V.I. 2014), that change does not apply retroactively to trial proceedings that concluded before the adoption of the Federal Rules of Evidence on April 7, 2010. *Chinnery v. People*, 55 V.I. 508, 525 (V.I. 2011). At the time of the 2002 trial, 5 V.I.C. § 911(3) expressly provided that "[u]nless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission." This provision was based on Rule 56 of the 1953 Uniform Rules of Evidence, which was meant to "remove[ ] the necessity of cumbersome preliminary findings and resulting delay [by] presum[ing] that the judge finds the conditions fulfilled unless he excludes the testimony." Comment to 5 V.I.C. § 911 (1997).

■■■■ The Appellate Division also overlooked 5 V.I.C. § 4927, which has provided since 1965 that "[i]n determining the law of any jurisdiction or governmental unit thereof outside this territory, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence." 1965 V.I. Sess. Laws 58. Under this section, to the extent that Murnan's testimony

concerned Danish law, it was testimony on foreign law, and a court hearing testimony on foreign law "need not determine whether [it] would be admissible under . . . *Daubert*" in order to admit the testimony. *HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 264 F.R.D. 146, 148-49 (D.N.J. 2009) (discussing the requirements of the nearly identical Federal Rule of Civil Procedure 44.1); *see* FED. R. CIV. P. 44.1 Advisory Committee Notes (1972) ("[T]he purpose of the provision is to free the judge, in determining foreign law, from any restrictions imposed by evidence rules."); *see also Gov't of the V.I. v. Certain Parcels of Land in Estate Nisky, No. 6 Southside Quarter, Consisting of 1.189 Acres More or Less in St. Thomas, U.S. Virgin Islands*, 713 F.2d 53, 57 n.10 (3d Cir. 1983) ("Danish law . . . formerly controlled in the Virgin Islands."). Therefore, under either section 911(3) or 4927 of title 5, the Superior Court was not required to conduct a *Daubert* hearing before admitting Murnan's testimony at the 2002 trial, and the Appellate Division misapplied Virgin Islands law in holding otherwise.[12]

▮▮Perhaps more importantly though, regardless of whether Murnan's testimony was properly admitted, the Superior Court didn't even rely on this testimony in finding that the road is public. Murnan testified that every road in existence in the Virgin Islands before 1917 was a "King's Road" owned by the Danish government that remained public after 1917, while the Superior Court — relying on the Danish Colonial Law of April 6, 1906[13] — expressly recognized that land on St. Thomas was divided between public and private ownership before 1917, and then went on to make findings of fact specific to the disputed road based on the evidence in the record. Furthermore, these findings — leading the Superior Court

---

[12] We further note that even if Federal Rule of Evidence 702 applied in the Superior Court during the 2002 trial, it was a bench trial with the jury serving only in an advisory capacity on the question of the road's status. The Appellate Division failed to acknowledge that the rationale of *Daubert* was premised primarily on preventing unreliable expert testimony from improperly influencing the jury, a concern that is not implicated when the judge is the finder of fact. *See In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony. That interest is not implicated . . . where the judge is the decision maker."); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) ("[T]he usual concerns of [*Daubert*] — keeping unreliable expert testimony from the jury — are not present in such a setting, and our review must take this factor into consideration.").

[13] The complete Colonial Law of April 6, 1906, is *reprinted in* V.I. CODE ANN. Historical Documents, Organic Acts, and U.S. Constitution at 1-25.

to conclude that the Hodges and the Government had established that the disputed road is public by clear and convincing evidence — were not clearly erroneous. *Malloy*, 61 V.I. at 181 (indicating that whether a particular road was public before 1917 is a finding of fact). In order for such a finding to be clearly erroneous, the party challenging the finding must demonstrate that it was "completely devoid of minimum evidentiary support or [had] no rational relationship to the supportive evidentiary data." *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013).

As the Superior Court explained in its detailed findings of fact, the disputed road was included in a 1912 map and identified as "Street to Frederiksberg," and was later depicted in a July 1917 boundary map with the description of "[t]o the Policemaster St. Thomas." According to the testimony of DPW commissioner Wayne Callwood, these maps indicate that the road was public at the time the Virgin Islands became part of the United States. He also testified that the Government of the Virgin Islands has treated the disputed road as public property since that time, marking it as a public road on official DPW maps and maintaining the road at public expense — something Callwood testified DPW would not do for a private road. A number of DPW employees supported Callwood's testimony, recounting the extensive work done at taxpayer expense on the road — including filling potholes, restricting it to a one-way street, posting signs that set a speed limit of 10 miles per hour, along with other street signs to regulate traffic on the road.

Further, while it was undisputed that some of this work occurred at BCI's request, there was also evidence that much of it occurred without BCI's permission or knowledge. There was testimony that DPW did this because the disputed road was often used as a bypass for motorists seeking to avoid traffic on Beltjen Road, which is consistent with the testimony of several other witnesses, including a former BCI employee, who agreed that the road has been considered a public right-of-way by the general public and used as such for much of the twentieth century — all without objection from BCI. The conclusion that the general public and surrounding property owners considered the disputed road to be public and relied on it as such is also supported by evidence that in 1917, Parcel 39A was divided into smaller parcels, leaving Parcel 39C accessible only through the disputed road. And after the West Indian Company purchased Parcel 39C in 1919, it used the disputed road to access the house and

garage it built on the property without incident until the Hodges bought the property in 1985.

In light of this substantial evidence that the disputed road was public before 1917 and remained a public right-of-way after that time, we cannot say that the Superior Court's conclusion in this regard was clearly erroneous. And while we recognize that there was evidence supporting the opposite conclusion, such as DPW maps from the 1930s that did not appear to include the disputed road, it is not the function of this Court to second-guess the findings of fact of the Superior Court judge who presided over the trial, nor to reweigh the evidence based on nothing more than a trial transcript.[14] *Tutein v. Arteaga*, 60 V.I. 709, 720-21 (V.I. 2014) (citing *Allen v. People*, 59 V.I. 631, 638-39 (V.I. 2013)).

Accordingly, the Appellate Division misapplied Virgin Islands law in vacating the Superior Court's 2002 judgment that found the disputed road to be a public right-of-way since at least 1912.

## B. Metes and Bounds of the Public Road

Due to the Appellate Division's errors, the Hodges urge this Court to vacate the Appellate Division's order and reinstate the Superior Court's June 17, 2002 order in full. Yet this Court typically will not disturb an order under review if any legal errors were ultimately harmless. *See* V.I.S.CT.R. 4(i); *St. Croix, Ltd.*, 60 V.I. at 477 n.3; *Brunn*, 59 V.I. at 908; *see also Tyler*, 365 F.3d at 212 (addressing alternate grounds for affirming an Appellate Division order). So if the Appellate Division's order vacating and remanding this case was appropriate under alternate grounds, we may still affirm. BCI argues — as an alternative to the arguments that the Appellate Division did not err and that this Court lacks jurisdiction to review its order in any case — that the Superior Court's June 17, 2002 order should not be reinstated because its findings on the

---

[14] Although BCI does not expressly raise this in its cross-appeal, we also note that the Superior Court did not err in holding that the 1974 quitclaim deed transferring the hotel property to BCI did not include title to the disputed road. BCI acquired the hotel property through a quitclaim deed from a private party in 1974, who in turn acquired title through a quitclaim deed from the United States in 1954. The United States acquired title to the property through the will of James Buchanan Nies in 1933. This chain of title was undisputed at trial, and the Superior Court found that it was "clear that the United States merely conveyed whatever it had received from its predecessor in interest, and there has been no evidence to suggest that its predecessor in interest, or anyone in the chain of title, owned the disputed roadway."

dimensions of the public right-of-way went beyond what the Hodges and the Government claimed was public. BCI raised this same argument before the Appellate Division in its first appeal in this case, but the Appellate Division did not address it.

█ In its 2002 findings of fact, the Superior Court found that the public right-of-way includes the entrance road, "continues along the southern portion of the hotel," and includes the exit road leading to Beltjen Road, and provided in the permanent injunction that BCI was "permanently enjoined from impairing or obstructing the road known as Frederiksberg Gade beginning at the end of Norre Gade and leading up to Bluebeard's Castle Hotel and abutting 39c Estate Taarneberg, continuing along the southern portion of the hotel and then onto the Beltjen Road." BCI asserts that this description of the road was erroneous because the Hodges' complaint only sought to establish the public's right to access the entrance road in order to reach Parcel 39C, and the Government's complaint similarly only challenged the construction of the gate blocking access to the entrance road from Frederiksberg Gade. We cannot agree with BCI that the Superior Court "improperly expanded" the disputed road in its 2002 judgment.

The Hodges' complaint stated that they were seeking a "declaratory judgment that the public at large enjoys a permanent easement of access, over Frederiksberg Gade, for access to Bluebeards Castle Hotel, parcel 39c Taarneberg, and other abutting parcels." The Government's complaint similarly alleged that BCI obstructed access to Parcel 39C when it constructed the gate across this road. Although these complaints were not models of clarity, the Hodges' complaint expressly stated that they sought "access" to Parcel 39C by the only means available — the disputed road. As the Superior Court found in its 2002 findings of fact, the Government designated the entrance road as a one-way street before this litigation began in 1997 — a fact that appears undisputed in the trial record. So with access to the entrance road alone, the Hodges would be able to travel to Parcel 39C, yet would be unable to leave without committing a trespass or a traffic violation.

█ Thus, the Hodges' action for "access" necessarily encompassed the entire road between Frederiksberg Gade and Beltjen Road, as the right of access is one "of *ingress and egress* [that] attaches to the land. It is a property right, as complete as ownership of the land itself." *City of Memphis v. Hood*, 345 S.W.2d 887, 889 (Tenn. 1961) (emphasis added);

*see also State Dep't of Transp. v. Kreider*, 658 So. 2d 548, 549 (Fla. Dist. Ct. App. 1995) ("[W]here all or part of access to an abutting road is destroyed, a taking occurs when a property owner's right of access has been substantially diminished." (internal quotation marks and citation omitted)); *Malloy*, 61 V.I. at 180 n.16 (noting that a property owner cannot be denied access to her property). This principle of property law — that "[t]he right of an abutting owner to access a public street or highway is a private property right in the nature of an easement and is an interest in land" — appears to be universally recognized among other United States jurisdictions, and by fundamental notions of common sense. 46 AM. JUR. PROOF OF FACTS 3D 493 § 14 (1998); *see also Dep't of Transp. v. Taylor*, 264 Ga. 18, 440 S.E.2d 652, 654 (1994) ("When property is contiguous to a public road, the right of access or easement of access to such public road is a property right arising from the ownership of such land.").[15]

In addition to the notice given by the very nature of the action itself, we note that BCI must have been aware that the right-of-way in dispute at trial encompassed the entire road running between Frederiksberg Gade and Beltjen Road. There was ample testimony in the trial record defining the disputed road as encompassing the entire right-of-way from the entrance road to the exit road, and recounting its public use. Therefore, we

---

[15] *D.M. Osborne & Co. v. Missouri Pac. Ry. Co.*, 147 U.S. 248, 256-57, 13 S. Ct. 299, 37 L. Ed. 155 (1893) ("[E]very owner of a lot abutting on a public street, besides the ownership of the property itself, had rights appurtenant thereto, which formed a part of the estate, [including] the right of ingress and egress to and from the property."); *MacGinnitie v. Silvers*, 167 Ind. 321, 78 N.E. 1013, 1014 (1906) ("The means of ingress and egress, and ways appurtenant to property constitute valuable property rights."); *State ex rel. State Highway Comm'n v. Meier*, 388 S.W.2d 855, 857 (Mo. 1965) (en banc) ("An abutting owner's property right to 'access' is better described as the right of ingress and egress to and from his property and the abutting public highway."); *Crawford v. Town of Marion*, 154 N.C. 73, 69 S.E. 763, 764 (1910) ("The right of ingress and egress over one's own land to the public streets and roads is an incident to ownership and constitutes a property right."); *Masheter v. Diver*, 253 N.E.2d 780, 784 (Ohio 1969) ("[T]he owner of property abutting on a public highway has the right to use that highway in common with other members of the public, and also the right of ingress and egress to and from his property."); *Wolf v. Commonwealth*, 422 Pa. 34, 220 A.2d 868, 871 (1966) ("[T]he right of access to and from a public highway is a property right of which the owner of property abutting the highway cannot be deprived."); *Hamilton Cnty. v. Rape*, 101 Tenn. 222, 47 S.W. 416, 417 (1898) ("[A property owner] has a right of ingress and egress to his property, or, as it is called, an easement of access.").

cannot agree with BCI that the Superior Court expanded the scope of the property that was in dispute during the 2002 trial.[16]

Because the Appellate Division misapplied Virgin Islands law in vacating the Superior Court's June 17, 2002 order, and BCI presents no alternative grounds that would allow us to affirm the Appellate Division, we vacate the Appellate Division's April 1, 2009 order vacating the Superior Court's June 17, 2002 order and remanding the case for further proceedings, reinstate the Superior Court's June 17, 2002 order, and further vacate the Superior Court's April 16, 2012 order issued in response to the Appellate Division's remand.

## C. Attorney's Fees

In BCI's appeal from the Superior Court's October 4, 2012 order denying its motion for attorney's fees, BCI argues that the Superior Court was required to award attorney's fees under 5 V.I.C. § 541. The Government counters that section 541 contains permissive language, placing the award of attorney's fees entirely within the Superior Court's discretion, which the Superior Court properly exercised here by denying attorney's fees altogether. Section 541 provides that, except in non-frivolous personal-injury actions, "there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or

---

[16] Although BCI also asserts that the Superior Court's June 17, 2002 order constituted a "judicial taking" in violation of the Takings Clause of the Fifth Amendment to the United States Constitution, it failed to raise this issue in its first appeal to the Appellate Division, and failed to raise it on remand to the Superior Court, and we thus consider the argument waived. *Rawlins v. People*, 59 V.I. 1069, 1072 (V.I. 2013) ("[A]n issue that could have been, but was not, asserted in a prior appeal is waived in a subsequent appeal.") (citing *Khalil v. Guardian Ins. Co.*, 59 V.I. 892, 897 (V.I. 2013)); V.I.S.Ct.R. 4(h); *see also United States v. Jones*, 132 S. Ct. 945, 954, 181 L. Ed. 2d 911 (2012) (considering a constitutional argument forfeited where it was not raised before the intermediate appellate court). Moreover, BCI's entire argument on this point comprises two sentences and a citation to a single United States Supreme Court case without elaboration. Because this issue is "only adverted to in a perfunctory manner," we consider it waived on that ground as well. V.I.S.Ct.R. 22(m). Even if we were to entertain this argument, the Superior Court's June 17, 2002 findings of fact determined that the disputed road was public before BCI bought the hotel property through a quitclaim deed, which cannot constitute a taking since the road never belonged to BCI in the first place. *See Red Hook Marina Corp. v. Antilles Yachting Corp.*, 9 V.I. 236, 245 (D.V.I. 1971) ("[T]he presumed intent of the grantor [is] to convey only as much land as he actually owned."), *aff'd*, 478 F.2d 1273, 1274-75, 10 V.I. 598 (3d Cir. 1973).

defenses thereto." 5 V.I.C. § 541(b); *see generally Kalloo*, 62 V.I. at 579.

 But the parties fail to acknowledge that this Court's precedent establishes that a motion for attorney's fees is not ripe for adjudication while an appeal is pending. *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280-81 (V.I. 2008) (for "prudential reasons" the Superior Court must "refus[e] to exercise jurisdiction" over an attorney's fees motion that is not ripe). The reason for this rule is obvious: the Superior Court has no way to determine which party is the "prevailing party" while the litigation is ongoing. *Id.* at 281. This case presents the perfect example of why this rule exists, since we are vacating the post-remand Superior Court proceedings in which BCI prevailed. *See In re Reynolds*, 60 V.I. 330, 336-37 (V.I. 2013) (stressing the importance of promoting judicial economy in Superior Court proceedings).

 Given that BCI's motion for attorney's fees was not ripe, and we vacate the judgment in which BCI prevailed, we also vacate the Superior Court's October 4, 2012 order. *V.I. Gov't Hosps.*, 50 V.I. at 280 ("When an appellate court concludes that a motion for attorney's fees was not ripe before the trial court, it must vacate the [trial] court's decision." (internal quotation marks omitted)). For this same reason, we do not disturb the portion of the Appellate Division's April 1, 2009 order vacating the Superior Court's original July 22, 2002 order awarding attorney's fees, *see* 51 V.I. at 695-700, but express no opinion at this juncture on the Appellate Division's stated reasons for doing so. If any of the parties now wish to seek attorney's fees as a prevailing party, they may do so in the Superior Court as provided for by the rules of this Court. *See* V.I.S.CT.R. 30(b) ("[I]f a party seeks attorney's fees as among the costs to be taxed, the amount of attorney's fees to be awarded — if any — shall be determined by the Superior Court on remand."); *Kalloo*, 62 V.I. at 578.

## IV. CONCLUSION

The Appellate Division of the District Court misapplied Virgin Islands law in vacating the Superior Court's June 17, 2002 order, which held that the disputed road providing access to the Hodges' property is a public right-of-way. The Superior Court did not err in admitting the testimony of Robert Murnan at trial without conducting a *Daubert* hearing because the Federal Rules of Evidence did not apply in the Superior Court during the

2002 trial. Furthermore, the Superior Court did not err in finding that the disputed road was public before 1917 and remains public today. We therefore vacate the April 1, 2009 order of the Appellate Division of the District Court vacating and remanding the Superior Court's June 17, 2002 order, and reinstate the Superior Court's June 17, 2002 order granting the Hodges a permanent injunction and declaratory judgment. We further vacate the Superior Court's April 16, 2012 order issued in response to the Appellate Division's remand. Finally, the Superior Court erred in ruling on BCI's motion for attorney's fees while the Hodges' appeal was pending because that motion was unripe, and so we also vacate the Superior Court's October 4, 2012 order deciding the motion for attorney's fees.